[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 338 
When the bank had discounted the Swift note for Wilbur, the situation of the parties was this: Wilbur still owed the bank $945, and he was liable as indorser on that note. The bank held the respondent's accommodation notes as collateral merely to the remaining debt of Wilbur and to his indorsement of the Swift note. As to the $945, the primary fund was the liability of Wilbur. As to the sum represented in the Swift note, the liability of the makers, and of Wilbur as indorser, were both primary in respect to the respondents. If immediately after the dishonor of the Swift note the respondents had paid the amount of it to the bank, they would have been entitled to subrogation, and to proceed at once against makers and indorsers for their reimbursement. From these relations of the parties it results that the bank had no right so to deal with the Swift note as to postpone the remedies to which the respondents were entitled on being subrogated to that security. If they did so deal without the assent of the plaintiffs, the latter were, to the amount of the note, discharged in equity if not at law. If, however, they assented to the dealing, or have placed themselves in a situation where they cannot object, then their liability still remains, unless they have some other answer to it. *Page 339 
The transaction between the bank and the parties to the Swift note probably postponed the collection of the money, which that security represented, for eight months. The bank had sued the note, and a defence had been interposed. The suit was compromised by taking a bond for the alleged debt and costs, payable in eight months, made by the same persons who were parties to the note, except D.D. Smith, one of the makers. The proof also tends to show that the bond was intended as an extinguishment of the note. Upon these facts, the bank having put it out of its power to proceed upon the primary liability until the period of extension should expire, the plaintiffs, whose liability was secondary and collateral, might have insisted that they were discharged in equity to that extent. But instead of doing so, they, in May, 1842, paid the bank in full, and took an assignment of the Swift note and the bond. After this, they cannot, in my judgment, complain that the bank thus dealt with parties to that note. I lay out of view the force of the judgments recovered against them, and on which they paid the money. It is extremely doubtful whether the facts stated would have been a defence at law. Be that as it may, it appears that the plaintiffs suffered the judgments in ignorance of the transaction, and therefore I concede that, notwithstanding the judgments, they might insist in equity that they were exonerated. But, instead of taking that ground, they paid up the bank, and took from it the primary fund in the condition it then was, and they still hold it. It is not pretended that this was done in ignorance of their rights; certainly not in ignorance that the bond on time had been substituted in place of the note. So far as appears, everything was known to them except the secret condition on which the bond was given, which I shall presently notice. I am speaking thus far of the bond only as an extinguishment of the note and a postponement of the liability for eight months; and not of the secret condition which was to extinguish the bond also. Knowing, then, that the Swift *Page 340 
note was extinguished, or at least that the right to collect the money was postponed, the plaintiffs paid the bank and took the primary securities into their own hands. Having thus taken that fund away from the bank, they have, so far, no ground of complaint. If they had refused to pay, the securities surrendered to them might still be of value to the bank. They must be deemed upon their own theory to have paid voluntarily, with full knowledge of the facts which they now claim exonerated them, and on paying they have received, so far as the case has yet been stated, just such subrogation to the primary fund as they asked for.
It is proved, however, that when the parties to the Swift note gave the bond, there was a secret agreement, by parol, that it should become void, provided the bank could collect the amount of the note from other securities which it held, including the accommodation notes of the plaintiffs. The plaintiffs afterwards paid their notes upon the judgments recovered upon them, and, as the demand of the bank was thereby satisfied, it is claimed that the bond cannot be enforced. The plaintiffs, when they paid and took the assignment of the bond, were ignorant that a secret condition attended it, by force of which, at that very moment, it became extinguished. Upon this, as a distinct ground, they claim to recover back the money so paid, and if, by reason of these facts, they cannot enforce the bond, their claim is well founded. The plaintiffs, on paying their accommodation notes, were entitled to be subrogated to the bond; but if that security became invalid as soon as it reached their hands, by reason of the unknown condition on which it was given, then the bank must pay back the money. Here, again, it should be observed, the judgments are no answer. This defence, if available at law, was unknown to the plaintiffs until after the judgments were paid, and there is no suggestion that there was anything to put them on inquiry after the facts. *Page 341 
I think the question, then, is, whether the bond is an available instrument in the hands of the plaintiffs. No weight, in my opinion, can be given to the circumstances that serious doubts were entertained as to their right to recover upon it, and that by advice of counsel they discontinued their suit to enforce it. The true point of an inquiry is, have the makers any legal defence. If they have not, then the plaintiffs have in their hands all that they expected to get when they received the subrogation and assignment. If there is a defence to that instrument, under the parol agreement made at the time it was executed, then, as they paid their money when they were not bound in equity to pay it, and in ignorance of the facts, they are entitled to recover it back.
Where, as in this case in respect to the bond, there is a perfect delivery of a written obligation, it is plain that evidence cannot be given of a cotemporaneous parol agreement, contradicting the terms of the instrument or impairing its force. But this rule does not exclude evidence to show that the obligation is collateral to some other debt of the obligor or of a third person, and is to become extinct when the debt is paid. Thus A. may be a creditor of B., and take the common bond of C. for the same debt. The bond is discharged when the debt of B. is paid, and it may be shown by parol that such was the agreement and such the purpose of the obligation. Such evidence is not regarded as contradicting the written undertaking, but as tending to show that it has been paid and discharged by another person bound for the same debt. It seems to me that the question before us must be determined under this rule. The bond was given as a substitute for the Swift note. The bank held the plaintiffs' notes for the same debt, and by the parol agreement the bond was to become extinct when that debt should be collected of them. The substance of the transaction was, that the bond should be held as collateral merely. It is true, the bank and the parties to *Page 342 
the Swift note had no right to enter into such a transaction. It was in fraud of the plaintiffs' equitable rights. Their liability was only secondary, whereas by this agreement the attempt was made to render it primary. But this objection comes with no grace from the bank, and it cannot be listened to. The bank must take the agreement as it was, and cannot be allowed to urge that it was intended as a fraud upon the plaintiffs, and is therefore ineffectual. Putting that objection aside, therefore, I am of opinion that, in a suit upon the bond, it would be competent, within the rule which has been stated, to prove the agreement under which it was to be held as collateral, and so to show that the obligation is satisfied.
The judgment should be affirmed.