HENRY J. WRIGHT, Respondent, v. RICHARD A. STORRS and
another, Appellants.

Where the plaintiff holds as collateral security for the payment of a debt, the
receipt of a bailee for stereotyped plates, and by an understanding and agree-
ment with the parties in interest, looking to their mutual advantage, he
transfers his interest in the plates, and gives an order for their delivery to
the vendee, who undertakes to pay his demand from the proceeds arising from
the use of the plates, and who gives security for the fulfillment of his under-
taking, the plaintiff still retaining a lien upon the plates for his further security,
the transaction is not to be deemed a payment.
The giving of further time for the payment of the debt due the plaintiff, with the
knowledge and assent, and for the benefit of those who stood in the relation
of sureties, does not discharge them from their liability as sureties.

DAVIES, J.    The defendant, Storrs, is the survivor of the
firm of D. Burgess & Co., and the defendant Paine is the
administrator of the deceased member of the firm, D. Bur-
gess.    The action is commenced to recover the indebtedness
of the firm to the plaintiff for moneys loaned, &c.    No
objection was taken to the defendants, or to two causes of
action being united in one suit, and none is now made.

The judge who tried the action, without a jury, found the
following facts:

That before, on and after the 23d day of February, 1856,
Daniel Burgess and the defendant Storrs were copartners,
carrying on the business of booksellers and publishers, in the
city of New York, under the firm of Daniel Burgess & Co.;
that on or about the 23d of February, 1856, the said firm and
the plaintiff entered into an agreement of that date men-
tioned in the case, and that under said agreement the plain-
tiff advanced several sums of money to said firm, amounting
in the aggregate, with interest thereon to June 14, 1856, to
$14,043.63.    By the terms of this agreement, Burgess & Co.,
as security for said moneys, assigned to the plaintiff two
contracts made by them with one Tower, of Boston, Mass.,
and the stereotype plates in the said contracts mentioned.

That the plaintiff also, under said agreement, entered into the
employment of said firm, and continued in such employment

up to the time of the death of said Burgess, on the 13th of May, 1856, and was afterwards in the employment of the defendant Paine as administrator, until July 1, 1856, and for his services in such employment he had been fully paid. That on the 29th of April, 1856, the said Burgess and the defendant Storrs entered into an agreement set out in the case. That by the terms of that agreement the said firm was to be dissolved on the 1st day of May, 1856, and said Burgess agreed to purchase all the property, effects and assets of said firm, and to assume and pay all the debts and liabilities thereof, and to indemnify and save harmless the said Storrs therefrom in all respects. That no notice of said last mentioned agreement was given, nor was the same known to the plaintiff until some time after the death of said Burgess, and before said Paine was appointed such administrator. That said Burgess died on the 13th day of May, 1856, and said Paine was appointed administrator on the 5th of June, 1856. That on the 6th of June, 1856, the defendant Storrs executed to the defendant Paine the agreement of that date, as set out in the case, and that by the terms thereof the said Storrs assigned to said administrator all his right, title and interest of, in or to the property or assets of said firm.

That on the execution of the agreement of February 23d, 1856, the two contracts therein mentioned with Tower, made by said firm of Burgess & Co., were immediately delivered into the actual possession of said plaintiff, who has ever since, and still holds the same. And that before and at the time of making said last mentioned agreement, the stereotype plates therein mentioned were in the possession of one Alvord, a printer in said city, and that after the making of said agreement, the plaintiff gave notice thereof to said Alvord, and he gave the plaintiff a receipt for said plates, to the effect that said plates were received from the plaintiff and were subject to his order.

That on the 16th day of June, 1856, the defendant Paine, as such administrator, and said Tower and Walker, entered into an agreement of that date, as set forth in the case, by the terms whereof said Paine, as administrator, sold and

assigned said two contracts between Burgess & Co. and Tower, and said stereotype plates (subject to the lien or interest of said plaintiff, Wright, therein), to said Tower and Walker, who, in consideration thereof, assumed and agreed to pay to said Wright said indebtedness of Burgess & Co. to him, amounting to $14,043.62, with interest from June 14, 1856. On the 18th of June, 1856, by an agreement of that date, reciting the two contracts between Burgess & Co. and Tower, and the said agreement between Burgess & Co. and Wright, said Tower and Walker sold and assigned to the firm of Sanborn, Carter & Bazin, of Boston, the said two contracts between Burgess & Co. and Tower, and the said stereotype plates, subject to the rights and claims of the plaintiff, Wright, therein, under said agreement of 23d of February, 1856. And said Sanborn, Carter and Bazin agreed to pay said Wright said sum of $14,043.32 and interest, in semi-annual payments.

That on the said 18th day of June, 1856, the plaintiff and said Sanborn, Carter & Bazin entered into and executed an agreement of this date, whereby, after reciting all the above mentioned contracts, and also reciting that the plaintiff held the two contracts so assigned to him, and had the said stereotype plates in his actual possession, and that Sanborn, Carter & Bazin had acquired the rights of Burgess & Co. therein, subject to the rights and claims of the plaintiff in and to said two contracts, and said plates as security as aforesaid, the payment of which moneys had been assumed by said Sanborn, Carter & Bazin, it was witnessed, that in consideration of the premises and of one dollar, and in consideration of the plaintiff permitting Sanborn, Carter & Bazin to use said stereotype plates, they, the said Sanborn, Carter & Bazin, agreed to pay the said debt due to the plaintiff, in semi-annual installments, by notes at four months, until the whole sum due was paid, the plaintiff to retain possession of said two contracts and of said plates, but to permit them to use said plates, and reserving to himself the right to repossess the same upon any breach of said contract. That on the 18th of June, 1856, the said Cornelius Walker exe-

cuted and delivered to the plaintiff, under seal, a guarantee for the payment of his debt, by said Sanborn, Carter & Bazin, within two years and six months, and promising to pay any balance due at the expiration of that time. And the said justice further found, that on said 18th day of June, 1856, the plaintiff made an order of that date on said Alvord for said stereotype plates, requesting the delivery of the same to said Sanborn, Carter & Bazin; and on the same day the said defendant Paine, as such administrator, also made an order on said Alvord, requesting the delivery of said plates to said Sanborn, Carter & Bazin; and that, *upon said two orders*, the said Alvord, on or about the same day, delivered the said plates to the said Sanborn, Carter & Bazin. That all said agreements and instruments were negotiated and made in the city of New York, with the knowledge of all the parties to this action, and without objection from or by any of them.

That at the time said agreements were made, the contracts and plates held by the plaintiff as pledgee, under and in pursuance of said agreement of February 23, 1856, were in danger of deteriorating in value, and of becoming valueless, or nearly so, and that it was necessary, in order to preserve their value, to make some arrangements by which they might be placed in the hands of a responsible publisher. That such arrangement was consequently made in and by said agreements of the 16th and 18th days of June, 1856, *by and with the consent of all the said parties*, and which arrangement was thought by all of said parties, at the time, to be and was for the undoubted benefit of all. That the amount due to the plaintiff, after deducting all payments made to him, on account of said debt, was $14,982.45. And the said justice found, as conclusions of law:

1. That the defendant Storrs, as surviving partner, was liable to pay the said balance of said debt.

2. That said copartnership was dissolved, as between said Burgess and Storrs, on the 29th of April, 1856; and as between them said Burgess then assumed and became individually liable for the debts of said firm; and that as between

said Burgess and Storrs, said Burgess became individually the owner of the property and assets of said firm.

3. That said agreements did not operate as a payment of the said debt due to the plaintiff, or any part thereof, except to the extent of the amount of money since received by the plaintiff upon or under the same.

4. That said plaintiff is not by, under, or by reason of said agreements, or either of them, barred of or from, nor has he thereby lost or relinquished his claim against said defendants, or either of them, or the estate of the said Burgess, for the said debt or any part thereof.

5. That the plaintiff is entitled to judgment against said Storrs, as surviving partner of said Burgess, for said balance due.

6. That all the assets and property which belonged to said firm, on said 29th of April, 1856, and which were in possession of said Burgess at the time of his death, and have since come to the possession of said administrator, are assets of said firm, in the hands of said administrator, and applicable to the payment of the debts of said firm, including that of the plaintiff, and that the debts of said firm are entitled to priority of payment out of said assets over any individual debts of said Burgess.

7. That the plaintiff is entitled to the benefit of the collateral securities, which he held for the payment of his debts, until the same is paid.

8. That when the whole of the plaintiff's debt is paid, the defendant Paine, as administrator, as aforesaid, will be entitled to said collateral securities then held by him, or so much thereof as shall remain unpaid. Judgment was entered up on these findings, in accordance with them, and the same was affirmed on appeal to the General Term of the New York Superior Court.

It is now claimed on the behalf of the defendants, that by the sale and transfer of the contracts and plates upon the terms specified in the agreement of June 18, 1856, the plaintiff accepted the obligations of Sanborn, Carter & Bazin, and of Tower and Walker, in place of, and in payment of the

indebtedness of Burgess & Co. to him, and thereby discharged the defendants, Storrs and Paine, as administrators, from all claim against them or either of them for that debt. No fact is found by the justice which would authorize any inference that the plaintiff ever accepted the obligations of Sanborn, Carter & Bazin and of Tower and Walker, in place of those of Storrs and Burgess, and in payment of the indebtedness of the firm of Burgess & Co. to him. Neither does the language of any of the agreements warrant any such inference, but the findings of the court and the terms of the various instruments point alike to the fact that these undertakings were collateral to the primary liability of Burgess & Co., and not in payment of or in discharge and satisfaction of it. The indebtedness of that firm to the plaintiff to the amount claimed is not denied. It was assumed throughout the arrangement made between all the parties to be a just debt. As security for its payment, the plaintiff held as collateral an assignment of the two contracts with Tower, and the stereotype plates. As the court found, what is apparent, that said plates were in danger of deteriorating in value, and of becoming valueless, or nearly so, it was necessary, and for the interest of all parties concerned having an interest in them or claim upon them, to make some arrangement by which they might be placed in the hands of a responsible publisher. This was manifestly for the interest of Paine, representing the estate of Burgess, of Storrs, the surviving partner, liable for the debt to the plaintiff, and of the plaintiff, who had a lien thereon, for the payment of that debt, as also of the parties who had agreed to pay it. The property thus pledged was, in its then position, not only unproductive, but deteriorating, and in danger of becoming wholly valueless. The agreement first in point of time, needful to refer to for a correct understanding of the views and intentions of the parties, is that made by Paine, as administrator, with Tower and Walker, dated June 16th, 1856, which, after reciting the various agreements between the parties interested in said two contracts and in said plates, recites also the indebtedness of Burgess & Co. to the plaintiff, and the amount thereof and

his lien thereon, to secure the payment thereof.   And in con-
sideration of the sale and transfer of said two contracts and of
said plates by said Paine, as administrator, to said Tower
and Walker, subject to the lien and claim of the plaintiff
thereon, said Tower and Walker agreed to pay and dis-
charge the indebtedness of said firm to this plaintiff.   This
agreement recognizes, in the fullest and plainest terms, the
indebtedness of the firm of Burgess & Co. to the plaintiff,
and his lien upon said two contracts and upon said plates for
the payment thereof, and nothing is found therein which
countenances the idea that the plaintiff accepted the under-
taking or liability of Tower and Walker in payment of his
debt against the firm of Burgess & Co., or in discharge of
their liability.   The next agreement is one between Tower
and Walker and Sanborn, Carter & Bazin, dated June 18,
1856.

By the terms of this agreement, Tower and Walker
assigned to Sanborn, Carter & Bazin said two contracts, and
said stereotype plates, subject to the lien and claim thereon
of this plaintiff, and said Sanborn, Carter & Bazin agreed
to pay to this plaintiff the amount of his said debt against
said firm of Burgess & Co., in semi-annual payments, on the
first days of August and February in each year, until the
whole of said debt should be paid, and each of said pay-
ments to be in their note at four months for a sum equal to
the amount of copyrights, to be paid to said Tower and
Walker, pursuant to said agreement.   It was declared in said
agreement that nothing therein contained should be con-
strued to bind said Sanborn, Carter & Bazin to pay to this
plaintiff any greater amount or sum than should accrue or
become payable as therein provided on the books mentioned,
at the rates and in the manner in said agreement specified.
The agreement next in order is that of the same date, June 18,
1856, made between Sanborn, Carter & Bazin and this plain-
tiff, which recites the transfer to Wright, as security for the
moneys loaned and to be loaned by him to said firm of Burgess
& Co., of the said two contracts of that firm with Tower, and
said plates, and that the moneys so loaned, with interest,

amounted on June 14, 1856, to the sum of $14,038.16, and that as collateral security for which the plaintiff held said contracts and plates, and that said Sanborn, Carter & Bazin had become possessed of the interest of Burgess & Co. therein, and to said contracts and plates, subject to the lien and claim of this plaintiff; and that the payment of the moneys so due to the plaintiff had been assumed by said Sanborn, Carter & Bazin. The agreement then witnessed that in consideration of the promise, and · of one dollar, and in consideration of said plaintiff permitting them, said Sanborn, Carter & Bazin, to use the said plates for the purpose of publishing said books, they agreed to pay said plaintiff the amount of the indebtedness of said firm of Burgess & Co. to him, in semi-annual installments, on the first day of August and February in each year, each installment to be equal to the amount of the sums paid for copyrights, as specified in said contracts; and for each of said semi-annual installments, said Sanborn, Carter & Bazin were to give their note at four months; and in case of any default in such payments, then this plaintiff was to have the right to take said plates into his actual possession and retain the same, but on the payment of the whole amount due to him, said plaintiff agreed to assign and transfer all his right, title and interest in said contracts to said Sanborn, Carter & Bazin, or their assigns.

It was understood that nothing in said agreement contained should be construed to bind said Sanborn, Carter & Bazin to pay to this plaintiff any greater amount or sum than should accrue or be payable as copyright, as specified therein. And Sanborn, Carter & Bazin agreed to keep said plates in good repair during the continuance of this plaintiff's lien or claim, or until the whole amount due to him should be paid.

The next and last agreement was the guarantee of Walker, bearing the same date, June 18, 1856, by which he guaranteed to this plaintiff the payment by said Sanborn, Carter & Bazin, of the said sum of $14,038.16, with interest due and to grow due thereon within two years and six months from the date thereof. And he also covenanted and agreed, at the expiration of said time, to pay to this plaintiff any bal-

ance which should then remain unpaid of said principal sum and interest.

We look in vain, therefore, in these agreements, for any evidence that this plaintiff accepted the obligations of Sanborn, Carter & Bazin, or of Tower and Walker, or either of them, in place of his original debtors, Burgess & Co., and in payment of their indebtedness to him. On the contrary, as these various instruments conclusively show that original indebtedness was referred to as existing against that firm, and the agreements of the plaintiff with Sanborn, Carter & Bazin, and the guarantee of Walker, were but in furtherance of and to effectuate the sale and transfer by Paine, as administrator, to Tower and Walker, of said contracts and said plates. In this latter transfer the debt of the plaintiff is recognized, and the liability of the original debtors to pay the sum acknowledged. Such transfer and sale was made manifestly with the intent and for the purpose of providing the means of liquidating that indebtedness. The justice who tried the action has given, undoubtedly, the true reason for making it, namely, that the contracts and plates were in danger of deteriorating in value, and of becoming valueless, and that it was necessary, in order to preserve their value, to make some arrangement by which they might be placed in the hands of a responsible publisher, and that this arrangement was thought by all parties, at the time, to be, and was, undoubtedly, for the benefit of all interested. There is nothing, as already observed, in the agreement, which can be construed into an acceptance of the cumulative liability of Sanborn, Carter & Bazin, and of Tower and Walker, in place of that of the original debtors, and in payment of their liability to the plaintiff. The entire tenor of these provisions, and of the acts of the parties, and of the findings of the court below, lead directly to a contrary conclusion, and it follows that the plaintiff did not thereby discharge either of the defendants from the liability to pay said indebtedness to him. Paine, as administrator, first sold and transferred said contracts and plates to Tower and Walker, subject to the lien and claim of the plaintiff, and Tower and Walker sold and transferred the

same to Sanborn, Carter & Bazin, subject to the same lien. And the assumption by Tower and Walker, and by Sanborn, Carter & Bazin, of the debt due to the plaintiff, while it enhanced his security, was also a benefit to the defendants. A serious question might have arisen if this plaintiff had refused to aid carrying into effect the sales of the contracts and plates to Tower and Walker, and by the latter to Sanborn, Carter & Bazin, whether he would not, as between himself and his original debtors, have been held to look solely to the property transferred as security to him for the payment of his debt.

Whatever the plaintiff has done was manifestly for the interest of his original debtors, and to aid in the sale made by them of the property pledged, and to render it productive and of value; and it cannot be predicated of those acts, as contended for by the defendant's counsel, that he thereby appropriated the property thus assigned to him absolutely in payment of his debt. There is no fact found to warrant such an assumption; and the circumstance that the plates were delivered on the orders of the plaintiff as well as of the administrator, show that the plaintiff claimed no exclusive control over them, or right of disposition. All his claim set up or exercised at any time was that of mortgagee; and when the representative of the mortgagor sold and transferred the mortgaged property he consented that the vendee might take possession thereof, reserving fully his lien, and the vendee, with the consent of all parties, agreeing to pay out of the proceeds of the property, as fast as and so soon as realized, sufficient to pay off and discharge the plaintiff's lien thereon. But a conclusive answer to such objections is found in the fact that the court has found that the arrangements embodied in the agreements of 16th and 18th June, 1856, and the agreements themselves, are made with the consent of all the parties. And this finding disposes of the other objection urged to this recovery, namely, that the giving of time by the plaintiff to Tower and Walker, and Sanborn, Carter & Bazin, discharged the firm of Burgess & Co., the original debtors, who then stood in the relation of sureties. On the

assumption that such time was given, it is a satisfactory answer to the objection to point to the finding of the court, that such time was given with the consent of those now interposing this ground of defense; and that the arrangements whereby the same was given, was thought at the time by them, and actually was for their benefit and their advantage. If this plaintiff, in dealing with those who are to be regarded in the aspect of original debtors, so dealt with the assent of the principals, who occupied the position of sureties, their liability still remains. (*Chester* v. *Kingston Bank*, 16 N. Y., 336.) That he so dealt with these parties is established as a fact in the case, and therefore the principle of law sought to be invoked has no application. The judgment appealed from should therefore be affirmed, with costs.

Judgment affirmed.