JOHN C. SOUTHWICK, PLAINTIFF, *v.* THE FIRST NATIONAL BANK OF MEMPHIS, DEFENDANT.

*Right of one to recover money paid under a mistake of fact.*

March 13, 1873, one Thayer drew a draft upon a firm doing business in Memphis, of which he was a member, to the order of the firm of J. N. Merriam & Son, of Boston, by which it was indorsed to one F. P. Merriam, who sent it to a bank at Memphis for collection. The firm, upon which the draft was drawn, accepted it, but, being unable to pay it at maturity, were authorized by the firm of J. N. Merriam & Son, the payees, to draw a sight draft upon such firm, and use the proceeds thereof in taking up the old draft. The sight draft was drawn, and was discounted by the First National Bank of Memphis, which applied the proceeds thereof upon an existing indebtedness of the drawers, in ignorance of the agreement between such drawers and the drawees. The drawees having accepted and paid the draft, in the belief that the proceeds arising upon its discount had been used in taking up the old draft, subsequently brought this action against the defendant to recover the amount thereof, on the ground that the money was paid under a mistake of fact. *Held,* that the action could be maintained.

MOTION for a new trial on exceptions ordered to be heard, in the first instance, at the General Term, after a verdict directed in favor of the plaintiff at the circuit.

In 1873, J. N. Merriam & Son were a firm doing business in Boston, and Francis P. Merriam resided in that city.

On March 13, 1873, George H. Thayer, a member of the firm of Southworth, Thayer & Co., a firm doing business in Memphis, Tenn., drew on said firm, in Memphis, a draft for $2,500, payable in forty days after date, to the order of J. N. Merriam & Son. It was accepted by the drawees (Southworth, Thayer & Co.), and passed by the payees, J. N. Merriam & Son to Francis P. Mer-

riam, who held it at maturity and sent it to Memphis for collection, where it was, at the time of the events out of which this action arose, held for collection by the Merchants' Bank of Memphis.

Southworth, Thayer & Co. being unable to pay this draft so notified J. N. Merriam & Son, and on May 5, 1873, the latter firm telegraphed Southworth, Thayer & Co., at Memphis, as follows :

"BOSTON, *May* 5, 1873.

"You may draw upon us at sight for $2,500 to pay draft in our favor. Can you not make it at thirty or sixty days ?
"J. N. MERRIAM & SON."

The " draft in our favor " meant the above mentioned draft of March 13, 1873, then held in Memphis for collection.

Thereupon, Southworth, Thayer & Co., drew the draft involved in this action, being a draft for $2,500, dated Memphis, May 6, 1873, drawn by Southworth, Thayer & Co., to their own order at sight, on J. N. Merriam & Son.

One Wiggs, the book-keeper of Southworth, Thayer & Co., then took the draft to the First National Bank of Memphis, the defendant's bank, (where that firm kept an account) and asked the bank to take it and allow Southworth, Thayer & Co. to check on the proceeds " for enough to meet a note due on that day."

The defendant's cashier refused to do this, or to do anything with the draft except to credit the proceeds on an over-draft of Southworth, Thayer & Co., which then amounted to some $6,800.

The draft was subsequently left with the defendant, discounted by it, and the proceeds applied upon the said over-drafts.

On the day of its receipt the defendant sent the draft for collection to its correspondent, the First National Bank of Boston. It was presented to the drawees, J. N. Merriam & Son, on May tenth and then accepted, and paid by them on May thirteenth, in the belief that the proceeds would be applied to take up the first draft. Subsequently this action was brought by the plaintiff, to whom Francis P. Merriam and the firm of J. N. Merriam & Son had assigned their claims, to recover the amount so paid to the defendant.

*John E. Burrill,* for the plaintiff. Southworth, Thayer & Co. had no right to apply the draft in question to any other purpose than to take up the old acceptance of March 13, 1873. It was invalid in the hands of the defendant, who had not paid or parted with anything of value thereon, and it could not have recovered thereon. (*Stalker* v. *McDonald,* 6 Hill, 93; *Weaver* v. *Barden,* 49 N. Y., 293; *Stevens* v. *Com. Ex. B'k,* 3 Hun, 150; *Fulton B'k* v. *Phœnix B'k,* 1 Hall, 562; *Comstock* v. *Hier,* 73 N. Y., 269; *Haynes* v. *Rudd,* 24 S. C. R., 477; *Coddington* v. *Bay,* 5 J. C. R., 54; affirmed, 20 Johns., 637.) The acceptance was paid under a mistake of fact, and it is not necessary that the mistake should have been mutual — mutuality of mistake being necessary only where reformation and not rescission is sought. (*Smith* v. *McLinn,* 4 Lansing, 41; *Rider* v. *Powell,* 28 N. Y., 316, opinion, WRIGHT, J.; *Duncan* v. *Berlin,* 46 N. Y., 685; *Kingston Bank* v. *Eltinge,* 40 N. Y., 395; *Merchant's Bank* v. *National Eagle Bank,* 101 Mass., 285; *Appleton Bank* v. *McGilray,* 4 Gray [Mass.], 520; *Westerlo* v. *Dewitt,* 36 N. Y., 340; *Martin* v. *McCormick,* 8 N. Y., 331; *Mills* v. *Alderbury,* 3 Exch., 593; *Chester* v. *Bank,* 16 N. Y., 336; *Lake* v. *Artisans' B'k,* 3 Keyes, 276, and cases cited at page 278; *Canal B'k* v. *B'k of Albany,* 1 Hill, 287; *Goddard* v. *Merchants' B'k,* 2 Sandf., 247; *Rheel* v. *Hicks,* 25 N. Y., 289.) The fact that by the exercise of proper diligence the assignor of plaintiff might have avoided the error is no defence. (*Kingston B'k* v. *Eltinge,* 40 N. Y., 395; *Nat. Life* v. *Jones,* 1 S. C. [T. & C.], 470; *Duncan* v. *Berlin,* 46 N. Y., 685; *S. C.,* 11 Abb. Pr. [N. S.], 116.) The rule that the plaintiff's recovery may be defeated by showing that the defendant has a counter-equity to retain the money is not law in this State. (*Canaday* v. *Stiger,* 55 N. Y., 453.) The fact that the defendant received the proceeds of the draft in money, and that the money when so received was applied to the credit of Southworth, Thayer & Co., does not prevent the plaintiff from recovering it back, when it was paid by him to defendant under mistake, and when the defendant will not be prejudiced by canceling the credit which he has given to Southworth, Thayer & Co. (*Van Allen* v. *Am. B'k,* 52 N. Y., 8; *Tradesmen's B'k* v. *Chem. B'k,* 1 Paige, 302; *Mechanics' B'k* v. *Levy,*

3 id., 606 ; *Skinner* v. *Merchants' B'k*, 4 Allen, 290 ; *Atlantic* v. *Same*, 10 Gray, 532.)

*Francis C. Barlow*, for the defendant.

BARRETT, J. :

This case, although elaborately argued in voluminous briefs, is really in a very narrow compass.

When J. N. Merriam & Son paid their acceptance, they were under no legal obligation to do so. The draft had been substantially diverted by Southworth, Thayer & Co. Such was the legal effect of its application to a different purpose from that authorized by Merriam & Son. The defendant took the paper in reduction of Southworth, Thayer & Co.'s previous over-drafts. It is true that it had no notice of the restriction, but that does not alter the legal aspect of the case. There was no present consideration, no parting with value, no security surrendered, no new credit given, nothing but the application on account of the antecedent debt. Consequently, it being a case, not of accommodation paper, but of diversion, the bank was not a *bona fide* holder for value. (*Weaver* v. *Barden*, 49 N. Y., 293, and cases there cited by ALLEN, J.)

Now, Merriam & Son paid the acceptance, without notice of the diversion and in reliance upon its application by Southworth, Thayer & Co., to the use for which alone it had been authorized. They, therefore, paid it under a mistake of fact, and the defendant is bound *ex aequo et bono* to make restoration. We find no authority precisely in point, but the general principle is laid down in many cases. (*Lake* v. *The Artisans' Bank*, 3 Keyes, 276; *Duncan* v. *Berlin*, 46 N. Y., 685; *Merchant's Bank* v. *National Eagle Bank*, 101 Mass., 285; *Appleton Bank* v. *McGilvray*, 4 Gray, [Mass.], 520; *Mills* v. *Alderbury*, 3 Exch., 593.) And there would seem to be no good reason why a recovery should not be permitted.

*Lake* v. *The Artisans' Bank* (*ubi supra*) is almost entirely parallel. There the plaintiff paid a note upon which he believed himself liable as indorser ; in fact, he had not been charged. The court held citing *Waite* v. *Leggett* (8 Cow., 195); *Wheadon* v.

*Olds* (20 Wend., 174); *Chester* v. *Bank of Kingston* (16 N. Y., 336), that if he paid it under that mistake, there could be no doubt that he was entitled to recover. "That would not," said Parker, J., have constituted a "voluntary payment;" for the payment, if so made, was not made with full knowledge of all the material facts.

In *Comstock* v. *Hier* (73 N. Y., 269) the court went still farther. The note was indorsed for a specific purpose; there was, as here, a diversion, the makers transferring the note on account of an antecedent debt. These transferees then passed the paper to a *bona fide* holder for value, who recovered against the indorser; the latter was then permitted to recover over against the original transferees without value. Thus if the bank here had transferred to A. B., for value, and A. B. had thereupon collected of Merriam & Son, the latter could have recovered over from the bank. "I am of the opinion," said Allen, J., "that the plaintiff had an election of remedies, trover, for the conversion of the note, or an action for money had and received *for the amount which the defendants realized upon the sale of the note.*"

If such an action could be sustained, it is difficult to perceive why a recovery could not also be had, in case the amount of the note had been paid by the plaintiff directly to the defendants, in ignorance of the vice in the latter's title.

We have been referred to a class of cases, of which *Justh* v. *National Bank of the Commonwealth* (56 N. Y., 478); and *Stephens* v. *The Board of Education of Brooklyn* (Court of Apps., MSS. op. of Andrews, J., December 9, 1879) are examples, as bearing upon the present question.

These cases, however, proceed upon entirely different considerations and are really irrelevant to the present discussion. They simply apply the old rule that money, fraudulently or even feloniously obtained, cannot be followed into the hands of one who took it innocently in the way of business, or in payment of a debt. The checks, when paid, were treated as current money. "Being certified to be good," said Johnson, J., in the *Justh Case*, "and having been actually paid, they are to be regarded as money for all purposes."

It was upon this basis, namely: the importance of strengthening

public confidence in the currency, that both cases proceeded. "It is absolutely necessary," said ANDREWS, J.. in the *Stephens Case,* "for practical business transactions that the payee of money in due course of business shall not be put upon inquiry, at his peril, as to the title of the payer. Money has no ear-marks.   *   *   * It is generally impracticable to trace the source from which the possessor of money has derived it." That there is a plain distinction between such cases, and those arising out of promissory notes, is clearly indicated by JOHNSON, J., in the *Justh Case.* "In support of this claim," he observes at pages 482 and 483, "they (the plaintiffs) now insist that the same rules shall be applied to the defendant's right to retain the money which it has received, as would have been applicable if Gray & Co. had, by the same fraud, *obtained their promissory notes,* and had passed them to the defendant under the same circumstances *as the checks were passed,* and the defendant was now prosecuting them on the notes. *In this supposition the plaintiffs are mistaken.* They are the parties who were cheated by Gray & Co., and the loss by the fraud on them cannot be transferred to the defendant, an entirely innocent party. The money which the defendant had received came in the regular course of business in a form as current as if it had been bank notes or United States currency. If it can be followed by reason that the party who paid it procured it fraudulently, for aught I see, the transaction of business must stop, for no inquiry and no precaution could guard the receiver from responsibility."

Some other questions were raised, but they call for no special consideration. The testimony objected to was properly received, but the facts to which we have adverted, and on which the case really rests, sufficiently appeared from entirely unobjectionable testimony. There was no question for the jury, as the plaintiff was entitled to a direction upon the few facts which were beyond dispute. This was fully understood, as both parties asked a direction and neither requested a submission.

As to the form of the complaint, that we think was unimportant.

The plaintiff being entitled to recover upon the facts, and no surprise being claimed or indeed being possible under the circumstances, it is almost a matter of course to disregard technicalities, or, if necessary, to conform the pleadings to the proofs, even upon

appeal. In furtherance of justice that may now be considered as done.

As to a demand, we think the attitude assumed by the bank in the correspondence rendered it unnecessary.

Besides, the objection on that head was limited to the alleged failure to prove a demand " in the right of J. M. Merriam & Son." It was not necessary for the plaintiff to formulate the theory of the demand. *Non constat*, if the defendant had simply objected that no demand had been made the plaintiff would have shown a specific demand and refusal independent of the letters. We need not, therefore, consider whether a demand was really essential.

The question of jurisdiction is settled by the case of *Cooke* v. *The State National Bank of Boston* (52 N. Y., 96).

The exceptions must be overruled and judgment given for the plaintiff on the verdict, with costs.

DAVIS, P. J., and BRADY, J., concurred.

Exceptions overruled. judgment ordered for plaintiff, with costs.