ARLINGTON NATIONAL BANK *vs.* JOSEPH BENNETT & another.
SAME *vs.* SAME.

Essex.     November 7, 1912. — May 20, 1913.

Present: RUGG, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & DE COURCY, JJ.

*Bills and Notes,* Indorser. *Evidence,* Extrinsic affecting writings. *Release. Practice, Civil,* Exceptions, Rules of court, Verdict.

The provision of R. L. c. 73, § 137, cl. 5, that, by a release of the party primarily liable on a negotiable instrument, a party secondarily liable is discharged unless the holder's right of recourse against the party secondarily liable is expressly reserved, has no application where such release is given by the holder at the oral request and with the assent of the party secondarily liable, although the instrument of release is under seal and contains no reservation of any right against the party secondarily liable.

In an action by the holder of a negotiable promissory note against an indorser, oral evidence is admissible to prove that an unequivocal sealed instrument of release of the maker, which contains no reservation of a right of recourse against the indorser, was executed and delivered at the request of the indorser and on his promise to remain responsible.

Where the judge presiding at the trial of an action of contract, in which the declaration is in two counts, wrongly refuses to order a verdict for the defendant on the second count, but correctly charges the jury with regard to issues raised by the first count and the jury find a general verdict for the plaintiff, an exception of the defendant to the erroneous ruling as to the second count will not be sustained if it is apparent upon the record that the jury found facts which made the defendant liable under the first count, because under Rule 40 of the Superior Court the verdict can be amended so that it will be on the first count only.

Two ACTIONS OF CONTRACT, the declarations in which contained counts alleging that the defendants Bennett and Bourget were liable as indorsers of five promissory notes of a corporation, the Bennett-Bourget Company, and also counts alleging, as to each note, that, before its maturity, the corporation made an assignment for the benefit of its creditors and the defendants promised the plaintiff that if the plaintiff would assent to such assignment and would not hold the defendants responsible for the entire amount of the note, the defendants would pay to the plaintiff such balance as would be due after deducting such payment as the plaintiff might receive by reason of assenting to the assignment and sharing in its proceeds; that the plaintiff, relying on such promise of the defendants, assented to the assignment and received as its share of the proceeds of the assignment a part of the face of the note, and demanded of the defendants the balance and interest. Writs dated July 7, 1909.

In the Superior Court the cases were tried before *Keating,* J. The material facts are stated in the opinion. The release therein referred to, which the plaintiff executed under seal and delivered to three persons who were described in the bill of exceptions as "three trustees who were appointed by the creditors to sell the assets of the Bennett-Bourget Company and distribute the proceeds," was as follows: "Received of the Trustees of Bennett, Bourget Company, Sixteen Hundred fifty-five and 50/100 Dollars, being compromise adjustment of Fifty-five per cent. on our claim against said Bennett-Bourget Company, and is in full release, settlement and discharge thereof, and of said assignment and of said trustees."

At the close of the evidence, the defendants, in requests numbered one, two, three and four, asked for rulings in substance that the defendants could not be held liable as indorsers of the notes. In a request numbered five, as to the counts alleging that the defendants were liable by reason of promises based upon the plaintiff's assenting to an assignment made by the corporation for the benefit of its creditors, they asked for a ruling that there was no evidence that the plaintiff had assented to the assignment "as set forth in said counts," or that the plaintiff had received a dividend under said assignment, and that the defendants were entitled to verdicts on such counts.

A sixth request was as follows: "There can be no oral reservation of rights against indorsers when the makers have been released in writing under seal."

The judge completed his charge at the close of an afternoon session. The next morning the defendants again called the attention of the judge to the fact that there was no evidence that the plaintiff in any way assented to the assignment by the corporation for the benefit of its creditors, and that there was no proof of the contracts set out in the counts relating to the special promises alleged to have been made by the defendants and to have been based on the plaintiff's assent to such an assignment, and asked for further rulings based on that state of the facts.

The rulings asked for as above described were refused.

The judge in his charge to the jury stated: "What is meant by the words [in the statute] 'expressly reserved'? They mean that you must not be left to infer that the 'right of recourse' is reserved. They mean that in some form of language that right must be reserved, in some form of language the reservation of that right against indorsers must be expressed. It cannot be inferred."

As to Bourget, the judge in substance charged the jury that Bourget would be bound by the agreement made with the plaintiff by Bennett, described in the opinion, if he expressly authorized it to be made or if, after it was made, he benefited by it and ratified it.

The jury found for the plaintiff in the first action in the sum of $1,150, and in the second action in the sum of $225. The defendants alleged exceptions.

The cases were submitted on briefs at the sitting of the court in November, 1912, and afterwards were submitted on briefs to all the justices.

*W. Coulson,* for the defendants.

*J. C. Sanborn,* for the plaintiff.

BRALEY, J. The plaintiff being the payee and holder, the defendants unless discharged are severally liable as indorsers for the amount remaining due on each of the promissory notes in suit. R. L. c. 73, § 80; c. 173, § 3. But as the maker after maturity has been released by an instrument under seal, wherein no rights were reserved against them, they contend under R. L. c. 73,

§ 137, which provides that "a person secondarily liable on the instrument is discharged . . . by a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved," that a verdict should have been ordered in their favor.

If the holder of negotiable paper unreservedly released the maker without the consent of an indorser, the latter at common law was thereby discharged from all liability. *Sargent* v. *Appleton*, 6 Mass. 85. *Gifford* v. *Allen*, 3 Met. 255. *Sohier* v. *Loring*, 6 Cush. 537. *Pierce* v. *Parker*, 4 Met. 80. *Phoenix Cotton Manuf. Co.* v. *Fuller*, 3 Allen, 441. *Tobey* v. *Ellis*, 114 Mass. 120. The underlying reason is that the releasor, in whom is vested the title, by discharging the maker has impliedly stipulated not to pursue the indorser or to seek satisfaction from him.

It is as well settled by the common law that while the effect of the sealed instrument cannot be cut down by a mere parol agreement, yet where the indorser, who has not joined in the instrument, consents, the release as to him does not operate as a discharge even if no right of recourse has been therein reserved. *Gloucester Bank* v. *Worcester*, 10 Pick. 527. *Reed* v. *Tarbell*, 4 Met. 93. *Myrick* v. *Dame*, 9 Cush. 248. *Hale* v. *Spaulding*, 145 Mass. 482. *Chester* v. *Bank of Kingston*, 16 N. Y. 336, 338. *Mercantile Bank of Sydney* v. *Taylor*, [1893] A. C. 317. And his assent may be shown by parol. The evidence is not admitted for the purpose of controlling or affecting the legal meaning of the release, but only to show that, whatever may be its meaning, the indorser has consented that the meaning shall prevail, no matter how he may be affected. *Sohier* v. *Loring*, 6 Cush. 537. *Creech* v. *Byron*, 115 Mass. 324. *Osgood* v. *Miller*, 67 Maine, 174. *Chester* v. *Bank of Kingston*, 16 N. Y. 336, 338. *Deahy* v. *Choquet*, 28 R. I. 338. *Wyke* v. *Rogers*, 1 DeG., M. & G. 408. *Woodcock* v. *Oxford & Worcester Railway*, 1 Drew. 521.

The maker, where the holder's or creditor's rights against the indorser are expressly reserved in the instrument, is liable to the indorser for whatever sum he may be called upon to pay to make up the amount remaining due. But if the indorser has consented to the release, he is barred of any right of recourse. *Sohier* v. *Loring*, 6 Cush. 537, 547. *Potter* v. *Green*, 6 Allen, 442. *McKim* v. *Demmon*, 130 Mass. 404, 406.

A negotiable instrument is discharged under § 136 by payment in due course by or in behalf of the principal debtor, or by the party accommodated when the instrument is made or accepted for accommodation, or "by any other act which will discharge a simple contract for the payment of money." It had long been decided before the law as to negotiable instruments was codified that a simple contract, consisting of a promissory note, which is the debt itself, could be thus discharged and the maker or principal debtor relieved from all further liability to the holder. *West Boylston Manuf. Co.* v. *Searle,* 15 Pick. 225.

But the effect of a release upon parties secondarily liable is found in § 137. It is obvious upon comparison, as well as under our decisions, that the words, "release of the principal debtor," and "unless the holder's right of recourse against the party secondarily liable is expressly reserved," refer to the unconditional discharge of the maker. They have reference only to the first class of cases, where the question whether the indorser is released depends not upon his consent, for he has not consented, but upon the true intent of the agreement. See *Vanderford* v. *Farmers' Bank,* 105 Md. 164. The statute speaks of an express reservation in the instrument. The language is entirely inappropriate to describe a consent on the part of the indorser, when the release is given at his request, under the second class of cases. The statute therefore should be construed as not intended to preclude the indorser and the holder from entering into an agreement by which the indorser's liability should continue unimpaired.

The company, of which the defendant Bennett was the treasurer and financial agent, having become financially embarrassed, made a common law assignment for the benefit of creditors to which the plaintiff never became a party. Nor did the plaintiff ever accept the composition apparently offered under the assignment. After a petition in bankruptcy against the company had been filed and dismissed, the creditors effected a settlement which the plaintiff accepted, and thereupon executed the release accompanying the offer. The jury would have been warranted in finding upon the testimony of the plaintiff's cashier a waiver of demand and notice, and that while the company's affairs were in process of adjustment the defendants, who severally knew of the terms proposed, requested the plaintiff to accept the settlement, and to

apply the amount in partial payment. *Reed* v. *Tarbell,* 4 Met. 93, 96.

This evidence for reasons previously stated being admissible, the first, second, third and fourth requests were rightly denied. The sixth request, and the requests presented to and accepted by the judge when the instructions were partially completed, having omitted the material qualification, that on the evidence the jury could find the defendants had requested the plaintiff to execute the release with the express understanding that they should remain responsible, also were rightly refused.

By the fifth request, and the exceptions to the charge, the attention of the judge had been distinctly directed to the pleadings, where the counts on the oral promise alleged that the plaintiff had become a party to the common law assignment and had received its share of the proceeds, while the evidence showed that the percentage was paid on an independent agreement of compromise. Apart, however, from any question of variance, which could have been cured by an amendment, the jury should have been instructed that the defendants' liability to pay the amount remaining depended not on their oral promise to make the plaintiff whole for the difference, but on their assent to the acceptance of the compromise and release of the maker. If these conditions were proved their contract of indorsement still subsisted, and the plaintiff could prevail on the counts declaring on the notes which had not been surrendered. *Hunt* v. *Brown,* 146 Mass. 253, 254, 255.

But the defendants have not been harmed. It may be that in referring to the application of the statute some of the expressions used by the judge were not technically appropriate, yet the instructions as a whole were sufficient in substance. The jury were correctly and clearly instructed, that unless the settlement had been effected and the release given with their knowledge and consent, the defendants were entitled to a verdict. It moreover is undisputed, that the amounts recoverable are exactly the same under either form of pleading.

The instructions as to the liability of the defendant Bourget were sufficiently favorable. It was for the jury to determine upon conflicting evidence whether he assented to the release.

The verdict should not be disturbed, for under common law

Rule 40 of the Superior Court, judgment can be entered on the counts on the notes. *West* v. *Platt,* 127 Mass. 367, 371. *Pelton* v. *Nichols,* 180 Mass. 245.

*Exceptions overruled.*