## Diamond National Bank of Pittsburgh v. Peck.

*Hirschwald, Goff & Davis,* for plaintiff.

*Stradley, Ronon, Stevens & Denby,* for defendant.

ALESSANDRONI, J., April 19, 1930.—The statement of claim set forth the following facts: The plaintiff is the holder of two notes in the sums of $10,000 and $5000, respectively, made by the Building and Industrial Construction Company, payable to the order of "ourselves" and endorsed Building and Industrial Construction Company, Lyman S. Peck, President, and Lyman S. Peck, both notes being dated Jan. 19, 1927, and payable sixty days after date. When presented for payment on March 21st they were not honored and were duly protested and notice sent to the defendant. Seventy-five hundred dollars was paid on account of both notes and the balance of $7500 forms the basis of plaintiff's claim.

The defendant sets up two defenses to the action. It is first contended that the defendant is discharged from liability because the notes were due and payable on March 20, 1927, and were not presented until March 21, 1927. March 20, 1927, fell on Sunday, and under section 85 of the Act of May 16, 1901, P. L. 194, "when the day of maturity falls upon Sunday or a holiday, the instrument is payable on the next succeeding business day." There is no validity to this defense.

The defendant sets up a second defense that the plaintiff on March 5, 1927, entered into an agreement of compromise and release with the Building and Industrial Construction Company and other creditors of the said corporation in which it was agreed that the creditors take "in full discharge of the several debts and claims due said creditors the sum of 50 cents on the dollar." A supplemental agreement reaffirmed the terms of the original, and the conditions of the agreement having been fully complied with, defendant contends that he is discharged from liability, as no right of action was reserved against him by the plaintiff.

The plaintiff bases its rule for judgment on the contention that the defendant impliedly assented to the discharge of the construction company by signing the compromise agreement as president of the Building and Industrial Construction Company, which, it is averred, precludes his discharge from liability.

Section 120 of the Negotiable Instruments Act in Pennsylvania provides, in sub-sections 5 and 6, that "a person secondarily liable on the instrument is discharged . . . (5) by a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved. (6) by any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved." Under the language of subdivision 5, it is expressly stipulated that one secondarily liable on a negotiable instrument is discharged unless the right of recourse is expressly reserved. It is not contended that any express reservation was made, and, therefore, it would seem that the defendant is discharged.

In First National Bank of Hanover v. Delone, 254 Pa. 409, 420, the court considered the meaning of "express reservation of the right of recourse," and said: "Before leaving this subject, we take occasion to say, while there may be some force in the appellant's contention that, when an agreement to extend the time of payment is made with a person primarily liable, the words of the Act of 1901, supra, require an 'express' reservation of recourse against one secondarily liable, yet, when the reasons for this statutory provision are understood, it becomes plain that courts should not be overly particular as to the precise phraseology of such a reservation, so long as it may reasonably be construed as complying with the requirements of the act, which merely announce a well established rule: See Crawford's Annotated Negotiable Instruments Law (Pennsylvania edition), notes 'd' and 'e,' on pages 109 and 110; Hagey v. Hill, 75 Pa. 108; Manufacturers' & Mechanics' Bank v. Bank of Pennsylvania, 7 W. & S. 335, 341, 342."

The court in National Bank v. Hanlon, 183 Mo. App. 243, decided that only an express reservation would preclude a discharge of an endorser when the principal debtor is released. In that case there was an express assent to the discharge of the maker's liability. It appears also that by the law merchant in Pennsylvania an express reservation of the right of recourse was required: Hagey v. Hill, 75 Pa. 108. The court there quoted: "It was said, however, by Lord Chancellor Eldon, in Ex parte Glendenning, vide supra: 'Ever since Mr. Richard Buck's case, the law has been clearly settled, and is now perfectly understood, that unless the creditor reserves his remedies, he discharges the surety by compounding with the principal, and the reservation must be upon the face of the instrument by which the parties make the compromise; for evidence cannot be admitted to vary or explain the effect of the instrument.'"

The only case relied upon by the plaintiff which may be deemed in point is Arlington National Bank v. Bennett, 214 Mass. 352. In that case, however, there was an express reservation, although there was some dicta which might be construed as meaning that an implied assent to the discharge of the maker precluded the discharge of the endorser.

The rule for judgment might, however, be discharged on another ground. The plaintiff seeks to infer from the fact that the defendant signed a composition agreement as president on behalf of the Building and Industrial Construction Company that he thereby assented in his individual capacity to the discharge of the maker of the note. To our mind, this inference cannot be drawn. It is conceivable that the defendant was obligated to sign for the corporation of which he was president, and certainly the act of the corporation does not carry an implication that the agent by whom the act is consummated

intends to bind himself in his separate and individual capacity by any adverse inference that may be deduced from his representative act.

And now, to wit, April 19, 1930, the rule for judgment for want of a sufficient affidavit of defense is discharged.